UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFF SCHWOERER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE WILLIAMS COMPANIES, INC.,<br><br>*Defendant*. | Civil Action No. 5:20-cv-00375<br><br>Judge Patrick R. Wyrick |

## CLEVELAND INTEGRITY SERVICES, INC.'S MOTION TO INTERVENE AND SUPPORTING BRIEF

Marc Coon ("Coon"), Blake Salsbury ("Salsbury"), and Dustin White ("White") have joined this lawsuit seeking overtime under the Fair Labor Standards Act ("FLSA") from The Williams Companies, Inc. ("TWC"). (*See* Dkt. 6, 14, 12.)  Yet, each was employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), who put them to its teams performing services on TWC's worksites.

CIS (their actual employer) moves to intervene pursuant to Federal Rule of Civil Procedure 24 to address Coon's, Salsbury's, and White's employment claims.  Plus, all three executed an arbitration agreement as a condition of their employment that commits their instant FLSA claims to arbitration; CIS also seeks intervention to enforce that arbitration agreement.

1

## I.   FACTUAL BACKGROUND

### A.   CIS's Relationship with TWC

CIS provides third-party inspection services and sends its professional personnel to perform those services on its customers' projects. (Declaration of Michael Frye (attached as Ex. 1) at ¶ 3.)  This is comparable to a CPA firm sending auditors to its clients' offices. In both instances, there is a compelling logic for having truly independent inspections done:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.    And, because this inspection work requires specialized personnel on a project basis, these assignments are for a finite period.

TWC is one of CIS's customers. (Frye Declaration at ¶ 4.)  CIS controlled and directed its employees to provide the inspection services that TWC requested. (Frye Declaration at ¶ 5.)  TWC paid CIS to compensate it for the services it provided; that payment covered CIS's overhead, equipment, material, salary, benefits, and applicable taxes and withholdings under state and federal law. (Frye Declaration at ¶ 6.)  From that

amount, CIS, in its sole discretion, determined how much to pay each of its personnel. (Frye Declaration at ¶ 6.)

### B. CIS's Employment of Coon, Salsbury, and White

CIS employed Coon, Salsbury, and White as pipeline inspectors on its teams providing those third-party inspection services. (Frye Declaration at ¶¶ 8, 16, 24.) Each were, in turn, assigned to its teams working on TWC's projects. (Frye Declaration at ¶¶ 9, 17, 25.)[1]

Coon, Salsbury, and White each signed or filled out at least thirteen separate documents identifying themselves as employees of CIS. (Frye Declaration at ¶¶ 12, 20, 28.) These included acknowledgments that they would be subject to CIS's policies and procedures governing its employees. (Frye Declaration at ¶¶ 11, 19, 24.) Further, each signed Internal Revenue Service ("IRS") W-4 Tax Forms identifying them as CIS employees. (Frye Declaration, Exs. A14, B16, C16.)

CIS determined Coon's, Salsbury's, and White's pay. (Frye Declaration at ¶¶ 13, 21, 29.) Specifically, CIS paid Coon and Salsbury a minimum weekly salary equal to four

---

[1] Plaintiff Jeff Schwoerer was also employed by CIS and assigned to TWC from December 1, 2017 to May 8, 2018. (Declaration of Michael Frye (attached as Ex. 1) at ¶ 32.) During this period, CIS paid him an hourly rate plus overtime for hours worked over 40. (Frye Declaration at ¶ 32.) Schwoerer's original Complaint alleged employment with TWC from December 2017 until May 2018. (Dkt. 1 at ¶ 38.) His First Amended Complaint now alleges employment only from May 2017 until December 2017, a time period where he was apparently employed by another inspection services entity. (Dkt. 32 at ¶ 13.) This amendment illustrates perfectly that these FLSA claims concern only the pay practices of the inspection companies: *i.e.*, the actual employers.

times their daily salary amount; this salary was set to comply with the FLSA requirements for the salary status exemption set forth in 29 C.F.R. § 541.604(b). (Frye Declaration at ¶¶ 13, 21.) CIS paid White an hourly rate plus overtime for hours worked in excess of forty a week.[2] (Frye Declaration ¶ 30.)

CIS also set Coon's, Salsbury's, and White's duties as inspectors on its inspection teams. (Frye Declaration at ¶¶ 14, 22, 29.) For Coon and Salsbury, CIS determined that those duties and their pay qualified them for an administrative exemption from the overtime requirements of the FLSA. (Frye Declaration at ¶¶ 14, 22.)

Significantly, all three executed an arbitration agreement as a condition of their employment with CIS. (Frye Declaration at ¶¶ 10, 18, 26.) Under those arbitration agreements, Coon, Salsbury, and White committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Exs. A2, B2, C2 at ¶ 2.) Each also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Exs. A2, B2, C2 at ¶ 2.)

Coon was employed by CIS and assigned to the TWC project from January 27, 2019 until August 19, 2019. (Frye Declaration at ¶ 15.) Salsbury was similarly employed and assigned from March 16, 2019 until October 5, 2019. (Frye Declaration at ¶ 23.) So too

---

[2] Coon too received an hourly rate plus overtime but only during the concluding weeks of time period at issue in this lawsuit where he changed to a different assignment. (Frye Declaration at ¶ 13.) He was classified as overtime exempt and salaried until June 27, 2019; thereafter, he was paid hourly plus the FLSA required overtime. (Frye Declaration at ¶ 13.)

for White from January 7, 2018 until November 6, 2018. (Frye Declaration at ¶ 30.) While working at TWC's worksites, each were indisputably employed by and paid by CIS.[3]

## II. ARGUMENT

This is an FLSA lawsuit alleging a failure to pay overtime. The central issue to Coon's, Salsbury's, and White's FLSA claims is whether CIS properly paid for their working time. Although CIS hired them, determined their overtime or overtime exempt status, and issued their paychecks, each is pressing his FLSA claim against CIS's customer (TWC).

CIS's status as Coon's, Salsbury's, and White's actual employer provides more than a sufficient interest to intervene. CIS has an interest in enforcing their commitment to arbitrate as well as an interest in defending its own employment decisions. CIS also has an interest because it faces an indemnity demand from TWC for their FLSA claims. Permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.

Thus, CIS seeks to intervene pursuant to Federal Rules of Civil Procedure 24(a) and 24(b).[4]

---

[3] The First Amended Complaint incorrectly asserts that the individuals sought to be represented here were independent contractors and paid a day rate. (*See* Dkt. 32 at ¶ 17.) This is incorrect. Coon's, Salsbury's, and White's tax forms confirm that they were CIS's employees, not independent contractors. (*See* Frye Declaration, Exs. A15, B17, C16.) Moreover, in White's case, his pay records prove that CIS paid him only an hourly rate plus overtime. (*See* Frye Declaration at ¶¶ 31, 34.)

[4] Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit 6 a motion to compel arbitration, seeking to enforce its bargain with Salsbury, Coon, and White. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*,

A.     **Rule 24(a)(2): Intervention As Of Right**

CIS's intervention is warranted. In fact, seven other courts addressing the identical scenario (FLSA suits against customers of plaintiff's actual employer) have granted intervention. *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, 2020 WL 2105064 (W.D. Pa. Apr. 13, 2020), *report and recommendation adopted* 2020 WL 2104911 (W.D. Pa. May 1, 2020) is illustrative.

There too, plaintiffs' counsel (which is the same counsel representing plaintiffs here) took the same tactic: bringing an FLSA lawsuit against a customer of CIS. The district court rightly granted CIS's motion to intervene:

> They hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay. They provided the employees to the named Defendant. The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition. Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they stated a sufficient interest in the litigation. In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id.* at *3.

Similarly, *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Ex. 2), *Ferrell v. SemGroup,* No. 4:19-cv-00610-GKF-JFJ, Dkt. 63 (N.D. Okla. June 12, 2020) (attached as Ex. 3), *Altenhofen v. Southern Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947 (W.D. Ky. June

---

239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file a motion to compel arbitration upon the Court's approval of its intervention.

30, 2020), *Page v. DTE Pipeline Company*, No. 2:19-cv-01345-DSC-LPL, Dkt. 65 (W.D. Pa. July 10, 2020) (attached as Ex. 4), *Bock v. Salt Creek Midstream, LLC*, Civ. No. 19-1163 WJ/GJF, 2020 WL 3989646 (D.N.M. July 15, 2020), *report and recommendation adopted* 2020 WL 5604669 (D.N.M. Sept. 22, 2020), and *Becker v. Delek US Energy*, No. 3:20-cv-00285, 2020 WL 4604544 (M.D. Tenn. Aug. 11, 2020) each confronted the identical issue: an FLSA lawsuit brought (again by the same counsel representing plaintiffs in this case) not against the inspection services company that was the actual employer, but rather against that company's customer.

Those courts uniformly granted the pipeline inspection services company's intervention:

- "[t]he Court finds the potential for Silver Creek [customer] to claim Applied [pipeline inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Snow,* Ex. 2, at 6.

- "[t]he court concludes that TIR's [pipeline inspection services company] potential liability as a joint employer and indemnity made upon it are sufficiently protectable interests which may be impaired if TIR is not permitted to intervene." *Ferrell*, Ex. 3, at 7.

- "[a]ccordingly, while Altenhofen does not directly assert an FLSA claim against CIS, it is certainly possible that CIS and Southern Star [customer] were joint employers and CIS could be construed as jointly and severally liable under the facts of the present case. The potential for joint and several

liability is a legally sufficient interest for intervention." *Altenhofen*, 2020 WL 3547947, at *3.

- "[w]hile at this point in time Plaintiff has chosen to not join Applied [pipeline inspection services company] as a defendant, any ruling made by this Court regarding DTE's [customer] liability could affect Applied's interest in having its liability as joint employer to be properly adjudicated, should Plaintiff chose to file suit against Applied at a later time." *Page*, Ex. 4 at 8.

- "Kestrel [pipeline inspection services company] has an interest in this litigation despite Plaintiffs strategically omitting any mention of its name in the Complaint. First, seeking to vindicate its AA [arbitration agreement] with Plaintiffs is a legitimate interest to Kestrel to protect. . . . Just as important, the 'transaction' (using Rule 24(a)'s term) that lies at the heart of Plaintiffs' Complaint is the employment relationship they allege they had with Defendant [customer]." *Bock*, 2020 WL 3989646, at *4.

- "the court finds that Cypress's [pipeline inspection services company] interest in putting forth all of its arguments as to why Becker is exempt from the FLSA's overtime provisions and its interest in resolving the question of whether the arbitration clause and collective action waiver in Becker's Employment Agreement with Cypress extend to Becker's claims against Delek [customer] may be impaired if these questions are resolved in Cypress's absence." *Becker*, 2020 WL 4604544, at *8.

8

The compelling logic of this case law applies equally here.  Each applied the Rule 24 standards that control here. *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2009) (en banc) establishes that intervention as of right should be authorized if (1) it is timely; (2) the movant has an interest relating to a subject that may, as a practical matter, be impaired or impeded by the disposition of the litigation; and (3) none of the existing parties will adequately represent the movant's interest.

CIS meets and exceeds each requirement of that test.

**First**, CIS's motion is timely; intervention at this early stage of the litigation (shortly after the filing of a First Amended Complaint) and by the deadline to join parties does not unduly delay or prejudice the rights of these opt-ins, the named Plaintiffs or TWC. *See, e.g., JMA Energy Co., LLC v. BJ Servs. Co.*, *USA*, No. Civ-08-738-M, 2009 WL 1856216, at *2 (W.D. Okla. June 26, 2009) (motion to intervene timely where suit "is in the initial stages and no substantive motions have been filed").

**Second**, the Tenth Circuit has explained that a sufficient interest need not be legal or direct. *San Juan Cty.*, 503 F.3d at at 1200, 1203.  Rather, it can be practical and contingent on the outcome of the litigation. *Id.*  Here, CIS asserts both legal and practical interests that would be impaired without its participation.

**i.**     The central issue to Coon's, Salsbury's, and White's claims is whether their pay conformed with the requirements of the FLSA.  CIS has a legal and practical interest in the adjudication of this issue because, as their employer, CIS exclusively controlled their pay and job duties, determined their overtime-exempt status, and maintains the employment records upon which their case is predicated.

9

If CIS cannot intervene in this lawsuit, its ability to defend against Coon's, Salsbury's, and White's claims that their compensation ran afoul of the FLSA would be undercut. Here, as in *Bock* (one of the identical cases granting intervention), this lawsuit is "every bit the full-scale assault on [CIS's] business model as it is on [TWC's]." *Bock*, 2020 WL 3989646, at *4. CIS faces the possibility that its pay practices will be found to have violated the FLSA: "[w]ith threats like that to [CIS's] financial security and its business operation model, denying [CIS] a podium in this debate is a result that Rule 24(a) is designed to prevent." *Id.*

Further, any FLSA liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . ."). The potential that CIS (the actual employer) may be jointly liable with TWC (if these opt-in plaintiffs are able to show that TWC also employed them) only enhances CIS's practical interest for intervention.[5]

---

[5] *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3-4, 6 (N.D. Tex. Nov. 29, 2017) illustrates that practical interest. There, the court stayed all proceedings in a FLSA suit against all joint employers after one joint employer filed a notice of bankruptcy **because** "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate." *Id.* The risk that *Blundell* identified is equally a risk here. There, it warranted a stay; here, it warrants intervention. *See also Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc., Inc.*, 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

**ii**.     CIS not only has an interest in vindicating its employment practices but also has a distinct interest in enforcing its arbitration agreements with Coon, Salsbury, and White. Moving forward without CIS could result in each being able to evade the arbitration forum in which they committed to bring their employment-related claims. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020) (attached as Ex. 5) (granting a pipeline inspection company's motion to compel arbitration because the arbitration agreement -- which used the exact same language and structure as the agreements signed by Coons, Salssbury, and White -- required arbitration of all employment claims, regardless of whom the claims were brought against).

Excluding CIS from this case would deprive it of the benefit of the bargain it struck: in exchange for employing Coon, Salsbury, and White, CIS received in turn their commitment to arbitrate and thus ensured "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). Because, as Coon's, Salsbury's, and White's employer, CIS would inevitably be involved in every stage of this proceeding, it ought to be able to enforce this bargained-for commitment to arbitration.

**iii**.     TWC has demanded that CIS indemnify it for any judgment or loss associated with Coon's, Salsbury's, and White's claims. (Frye Declaration at ¶ 7.) Under controlling authority, the specter of ultimately being on the hook for their claims against TWC further establishes the right and need for CIS to intervene in order to ensure that the claims for overtime are vigorously and competently defended. *Barnes v. Security Life of Denver Ins. Co.*, 945 F.3d 1112, 1123 (10th Cir. 2019) (even potential responsibility for

11

liability provided the intervenor "a financial interest in the proceeding that is sufficient to satisfy the minimal burden we have imposed for intervention as of right").

**Third**, CIS's interest is not adequately represented by the existing parties. Although TWC and CIS may both be interested in defeating Coon's, Salsbury's, and White's FLSA claims, that interest "diverge[s] in that [CIS] is the entity that determined [their] pay status, employment duties, and issued the paychecks" and in that CIS "has an employment contract with [them] which contains the arbitration agreement, while [TWC] does not." *Altenhofen*, 2020 WL 3547947, at *6.

Those differences in interest will easily be reflected in the defense of this case. For example, in light of TWC's indemnity demand, there is "the distinct possibility" that TWC and CIS "may point the proverbial finger at each other" at some point in the litigation. *Snow*, Ex. 2 at 8; *see also Bock*, 2020 WL 3989646 at *5. CIS cannot rely on TWC to protect all its interests.

### B. Rule 24(b)(1)(B): Permissive Intervention

Beyond intervention as of right, CIS is separately entitled to intervene as a matter of permission based on those same considerations. CIS timely asserts defenses to Coon's, Salsbury's, and White's prosecution of their FLSA claims that share with the main action both common questions of law and of fact.

There are undeniably **common questions of law**: *e.g.*, the enforcement of CIS's arbitration commitment. That common issue itself warrants intervention. *Robertson*, 2020 WL 2105064, at *8 (granting intervention in identical case and noting that determining

whether a court is the proper forum for an FLSA claim given an arbitration agreement is a common question of law).

There are also **common questions of fact**. The central issue is in this case is whether Coon's, Salsbury's, and White's pay complied with the FLSA's overtime requirements. These questions cannot be resolved without addressing the actions of CIS, which determined Coon and Salsbury were exempt from the FLSA's overtime requirements and which paid White's overtime. CIS asserts a defense -- that Coon, Salsbury, and White have been properly paid under the FLSA -- that addresses the core facts of their FLSA claims. *Robertson*, 2020 WL 2105064, at *6 (identical case granting intervention; "Any determination that Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive intervention); *Snow*, Ex. 2, at 10 (identical case allowing pipeline inspection company in to an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

### III. CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Dated: September 25, 2020						Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Paul DeMuro
Paul DeMuro, OBA # 17605
FREDERIC DORWART, LAWYERS PLLC
Old City Hall
124 East 4th Street
Tulsa, Oklahoma 74103
(918) 583-9922 - Telephone
(918) 583-8251 – Facsimile
pdemuro@fdlaw.com

Rachel B. Cowen, *pro hac vice forthcoming*
Barrick Bollman, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com
Firm ID No. 90539

**CERTIFICATE OF SERVICE**

The undersigned does certify that on the 25th day of September 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

/s/ Paul D. DeMuro

Paul D. DeMuro